**ROYAL FIXTURE COMPANY,**
Appellant,

v.

**PHOENIX LEASING, INC., Respondent.**

**No. WD 49155.**

Missouri Court of Appeals,
Western District.

Jan. 31, 1995.

---

**3.** References to statutes are to RSMo Supp.1993    unless stated otherwise.

Teresa A. Reinking, Kansas City, for appellant.

John J. McFadden, Jr., Kansas City, for respondent.

Douglas Silvius, Kansas City, for defendant Greg Montoto.

Before SPINDEN, P.J., and LOWENSTEIN and ELLIS, JJ.

SPINDEN, Presiding Judge.

Phoenix Leasing, Inc., appeals the trial court's judgment that it should pay for equipment fabricated by Royal Fixture Company for an ice cream shop franchisee. The trial court concluded that Phoenix Leasing caused Royal Fixture to rely, to its detriment, on Phoenix Leasing's false promises that it would pay for the equipment within seven days of receiving an acceptance notice from Greg Montoto and 3524 Burnham Corporation.[1]

Phoenix Leasing contends that the trial court's conclusion was erroneous because the person on the Phoenix Leasing staff who made the promises did not have authority to alter the purchase order's terms. Phoenix Leasing also contends that the trial court erred in ruling for Royal Fixture because Phoenix Leasing's purported promise was conditioned on events which never occurred. We affirm the trial court's judgment.

The dispute arose when Phoenix Leasing agreed to help Montoto obtain display cases and cabinets for a mall ice cream store Montoto planned to operate. Phoenix Leasing agreed to purchase the cases and cabinets from Royal Fixture and to lease them to Montoto.

On January 7, 1993, Phoenix Leasing's vice president, Cal Rothman, issued to Royal Fixture a purchase order for the equipment. The purchase order provided that Phoenix Leasing's purchase was conditioned on its accepting from Montoto "properly executed lease documents." It also provided that Phoenix Leasing would have no obligation to pay for the equipment unless:

(a) [Royal Fixture] shall have delivered to [Montoto] ... all the Equipment, (b) [Montoto] ... shall have accepted all such Equipment, and (c) [Phoenix Leasing] shall have received [Montoto's] written statement (herein called the "Acceptance Notice") which acknowledges (i) receipt of the Equipment in good condition and repair, (ii) acceptance of the Equipment as satisfactory in all respects for the purpose of said Agreement, (iii) approval of [Royal

---

1. For the reader's ease, we will refer to Montoto and 3524 Burnham Corporation collectively as Montoto.

Fixture] invoice for the Equipment, and (iv) a request for payment of such invoice. The purchase order also prohibited any oral modifications of its terms and conditions. Rothman also testified that, in addition to the purchase order's conditions, all of the terms of Montoto's commitment letter had to be satisfied before Phoenix Leasing would deem itself obligated to pay for the equipment. One of the commitment letter's conditions was Phoenix Leasing's on-site verification that the equipment was acceptable.

Before Royal Fixture shipped the equipment to Montoto in early February 1993, Don Eager, Royal Fixture's vice president, telephoned Kari Vadnais, who had coordinated the project for Phoenix Leasing, to determine whether all of the conditions had been satisfied. Vadnais' duties at Phoenix Leasing included coordination of lease documents and issuing and mailing checks to vendors. She regularly made unilateral determinations that a project's documentation was complete and that Phoenix Leasing could pay a vendor. When changes had been made to a project's documents, she referred the case to the company's lawyers. Vadnais told Eager that it was waiting for an acceptance notice from Montoto before paying Royal Fixture. She said that Phoenix Leasing would issue a check for the equipment within seven days after getting the notice.

Because Montoto could not give Phoenix Leasing an acceptance notice until he had received the equipment, Royal Fixture immediately shipped the equipment. Royal Fixture confirmed that Montoto received it in good condition. Eager then called Vadnais who confirmed that Phoenix Leasing had received Montoto's acceptance notice.[2]

About a week after Montoto installed the cases and cabinets, Phoenix Leasing informed Royal Fixture that it was delaying payment because of a problem with Montoto's lease. On April 20, 1993, Phoenix Leasing announced that it would not pay for the equipment because Montoto had not submitted properly-executed lease documents to Phoenix Leasing. The amount owing on the equipment was $13,449.

Royal Fixture sued Phoenix Leasing and Montoto for the amount owing. The trial court dismissed Montoto from the lawsuit on jurisdictional grounds. It entered judgment against Phoenix Leasing for $13,449 in damages and $1058.68 in interest.

Phoenix Leasing appeals. It contends that Vadnais did not have authority to waive or to modify the purchase order's terms, and, even if she did, her promises were conditioned on events which did not occur. We disagree.[3]

■ Evidence established that Vadnais had the authority to bind Phoenix Leasing. Her duties went well beyond answering the telephone and relaying information, as Phoenix Leasing argues. Rothman testified that Vadnais' duties included advising vendors of the status of their lease agreements. Vadnais testified that she reviewed all the documentation received from lessees and determined whether it was acceptable. She also said that she was responsible for determining what constituted compliance with lease terms and for determining when a vendor should be paid. Eager confirmed that he worked only with Vadnais regarding Montoto's lease.

■ An implied agency relationship may be created by "implication from facts and circumstances for which the principal is responsible, facts giving rise to the implication that the principal intended to create the agency," especially when the principal knowingly acquiesces in the agent's prior acts. *Houston v. Groth Enterprises, Inc.*, 670 S.W.2d 178, 180 (Mo.App.1984). Vadnais'

---

2. Phoenix Leasing denies that it received an acceptance notice after Royal Fixture shipped the equipment. It acknowledges receiving an acceptance notice from Montoto *before* Royal Fixture shipped the equipment, but it contends that the notice could not have been valid because Montoto could not have inspected the equipment before Royal Fixture shipped it. Viewing the evidence in the light most favorable to the judgment, as we must do, we find sufficient evidence that Montoto sent his acceptance notice after receiving the equipment.

3. Phoenix Leasing further contends that the trial court also based its judgment on breach of contract. It argues in response, "To the extent that the trial court's judgment is construed as being predicated upon a breach of contract, the trial court erred because such relief was not requested in [Royal Fixture's] petition." Because promissory estoppel was an appropriate basis for the judgment, we do not decide the breach of contract issue.

duties and past dealings gave rise to an implication that Phoenix Leasing intended to create an agency relationship.

■■ We also find that Vadnais' promise to Royal Fixture that Phoenix Leasing would pay for the equipment within seven days of receiving Montoto's acceptance notice was a sound basis for a finding of promissory estoppel. The elements of promissory estoppel are: "(1) a promise; (2) detrimental reliance on the promise; (3) the promisor should have or did in fact clearly foresee the precise action which the promisee took in reliance; and (4) injustice can only be avoided by enforcement of the promise." *Geisinger v. A & B Farms, Inc.*, 820 S.W.2d 96, 98 (Mo.App. 1991). A promisee seeking to enforce a promise under promissory estoppel must show that his or her reliance on the promise was reasonable. *Otten v. Otten*, 632 S.W.2d 45, 49 (Mo.App.1982). The evidence in this case satisfies those elements.

Vadnais acknowledged that Eager called her before Royal Fixture shipped the equipment to determine the status of the lease agreement. She admitted that he was very concerned about making sure that everything necessary was completed so that Royal Fixture could be paid as soon as the equipment was delivered. Eager testified that, but for Vadnais' representations that the only unmet condition was Phoenix Leasing's receiving an acceptance notice from Montoto, Royal Fixture would not have shipped the equipment to Montoto.

Although Phoenix Leasing denies it, evidence supported a finding that it did receive an acceptance notice from Montoto. Eager testified that after Royal Fixture shipped the equipment, he telephoned Vadnais who confirmed that Phoenix Leasing had received Montoto's acceptance notice. Montoto testified that he signed two copies of notarized and dated equipment acceptance notices and sent them to Phoenix after he received the equipment.

We affirm the judgment of the trial court.

All concur.